IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2014

## KENNETH EUGENE BLACK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 102716      Bob R. McGee, Judge**

**No. E2014-00872-CCA-R3-PC - Filed January 22, 2015**

The petitioner, Kenneth Eugene Black, appeals the denial of his petition for post-conviction relief. He pled guilty to two counts of sale of a schedule I controlled substance within a school zone, Class B felonies. As part of the agreement, he received concurrent eight-year Range I sentences to be served at 100%, which is the drug-free school zone release eligibility. The petitioner now contends that he is entitled to post-conviction relief because his guilty plea was not entered knowingly and voluntarily because he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by failing to provide the petitioner with all discovery materials prior to his accepting the plea. Following review of the record and applicable law, we affirm the denial of post-conviction relief.

# Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Kenneth Eugene Black.

Herbert H. Slatery, III,, Attorney General and Reporter; Sophie S. Lee, Senior Counsel; Charme Allen, District Attorney General; and Sean McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# Procedural History

We must glean the facts underlying the petitioner's convictions from the transcript of the post-conviction hearing, as the petitioner failed to include a transcript of the guilty plea hearing. We note that his failure to include that transcript puts the petitioner at risk for waiver of all issues.

The petitioner's convictions arose after he made two separate sales of heroin to a confidential informant. The following was stated by the post-conviction court with regard to the factual basis for the petitioner's convictions:

> . . . let's take the audio/visual, he says it didn't show anything. The tapes didn't show anything, meaning that they did not actually show him handing the drugs to the CI or the CI actually handing the money to him. Those tapes rarely do. But they are very strong evidence supporting the testimony of the CI as well as the police officers who observed the transaction occur, who searched the CI before the sale and made sure that he or she doesn't have any money other than what the police give her or him. And that they have no drugs on them. And then they give the CI the money. The CI goes. The audio/visual shows the CI going to the [petitioner], connects them. And then they do whatever they do. And then he or she comes back to the police and gives them the drugs and doesn't have the money anymore. That's plenty strong enough to get a conviction. I've seen it happen over and over in this courtroom. That will support a conviction. And the police had that. And [trial counsel] correctly told the [petitioner] that that's strong evidence.

The petitioner was indicted for two counts of the sale of a controlled substance, heroin, in an amount greater than fifteen grams within one thousand feet of a public child care agency and two counts of delivery of a controlled substance over fifteen grams within one thousand feet of a child care agency. Pursuant to a plea agreement, the petitioner pled guilty to two counts of selling heroin within a school zone. The charges did not require proof of a specific amount of drugs. As part of the agreement, the petitioner received concurrent Range I sentences of eight years for each offense, the minimum sentence available. The sentences were to be served with the release eligibility status based upon the fact that the crimes occurred within one thousand feet of a school zone. No direct appeal was taken by the petitioner.

Thereafter, the petitioner filed the instant timely petition for post-conviction relief alleging that he was denied his right to the effective assistance of counsel, which resulted in his guilty plea being unknowing and involuntary. Following the appointment of counsel, an amended petition was also filed, and a hearing was held on the matter before the post-conviction court.

The first witness at the hearing, the petitioner, testified that he met with trial counsel on four occasions, once at the penal farm and three times at trial counsel's office. He stated that he was able to meet at trial counsel's office because trial counsel had secured pre-trial release for the petitioner. The petitioner stated that his wife accompanied him to those meetings that took place at trial counsel's office. He confirmed that, during those meetings, he and trial counsel discussed proceeding to trial, the strengths and weaknesses in the State's case, the elements of the charged offenses, and the possibility of a plea bargain. The petitioner also testified that trial counsel wanted him to give evidence against his supplier for a better deal.

The petitioner acknowledged that he viewed audio/visual recordings of the two controlled buys at trial counsel's office. He complained that the recordings did not show an actual transaction, and, thus, the State lacked proof of the crime. Nonetheless, he did acknowledge that it was him in the recordings. The petitioner also admitted that trial counsel explained to him that he could be convicted despite what was not shown on the tape, that the State's case was strong, that FBI and DEA agents would testify, and that he could possibly get sixteen to twenty years if convicted based upon consecutive sentencing. The petitioner noted that trial counsel specifically told him that he would likely be convicted at trial.

With regard to the factors that influenced his decision to accept the plea, the petitioner noted that his wife was pregnant at the time of the petitioner's arrest. He testified that, based upon the possible sentences, he would have been around sixty years old when he was released from prison. The petitioner stated that he did not think it was worth risking going to trial.

The petitioner testified that trial counsel also advised him to take the plea agreement that was offered by the State. He did not dispute that trial counsel reviewed the terms of the agreement with him. He testified that, at the time, he thought that he understood the agreement. He also acknowledged standing before the trial court and telling the court that he understood the plea agreement and that he voluntarily chose to enter it.

One of the petitioner's main claims against trial counsel was that he failed to show the petitioner all of the discovery materials prior to his plea. The petitioner claims that the only materials that he saw was the audio/visual recording. However, after his convictions he

received other materials that led to questions about "the amount of drugs" he was charged with. According to the petitioner, there were exhibits in the discovery materials that indicated varying amounts of drugs being present. He stated that the amount shown in the photograph was not consistent with the indicted amount of fifteen grams or more. In particular, he referenced a photograph that showed a weight of 0.14 grams of heroin, which the petitioner claims establishes that he was "overcharged." The petitioner also pointed to toxicology reports, which indicated a different amount of drugs. The petitioner could not recall any discussion with trial counsel regarding the amount of drugs present.

While the petitioner understood that he was given the minimum sentence for a Class B felony, he testified that, had he known about the various discrepancies and the overcharging, he would not have accepted the agreement and would have insisted upon going to trial.

During cross-examination, the petitioner acknowledged that he was familiar with the criminal justice system based upon prior convictions in Tennessee and Michigan. Specifically, he testified that he had previously pled guilty and was familiar with the process of doing so. He also acknowledged that, at the guilty plea hearing, the court reviewed all of the rights that he was waiving and the terms of the agreement. The petitioner noted that he stated that he was guilty, that he was satisfied with his sentence, and that he was satisfied with trial counsel. He specifically stated that he was not being forced to enter the plea and did so voluntarily.

Trial counsel testified that he was appointed to represent the petitioner early in the case. He agreed that the petitioner's testimony regarding the number of meetings between them was accurate, with the exception that they also had discussions during court appearances and exchanged numerous calls and letters. Trial counsel testified that he was able to secure pre-trial release for the petitioner, so most of their meetings occurred in trial counsel's office.

Trial counsel testified that he believed that he had given the petitioner the State's notice to seek enhanced punishment based upon the fact that the crime occurred within one thousand feet of a school zone. Trial counsel recalled reviewing this information with the petitioner. Trial counsel stated that he was satisfied that the proof showed that the crimes occurred within a school zone and that he explained to the petitioner the effect this would have on a possible sentence.

Trial counsel noted that he was given open file discovery by the State in the case. He recalled there being toxicology reports, as well as a map delineating the school zone. Trial counsel testified that he felt that the State had a strong case against the petitioner and had

sufficient evidence to obtain a conviction even if the audio/video recording did not show the entire transaction. Trial counsel noted that he did explain this to the petitioner during their meetings. Although he could not specifically recall doing so, trial counsel testified that he believed that he had shown the petitioner discovery information in addition to the audio/visual recording, as it was his normal practice to do so.

Trial counsel stated that he seemed to recall that he had received discovery in this case in two stages. First, he received the audio/visual recording. Later, he received additional information. Trial counsel believed that he had reviewed the materials with the petitioner. He testified that the difference in the various weights enumerated was likely due to packaging or amounts used for field testing. He explained that it was simply a process that law enforcement went through. Trial counsel also noted that the crime for which the petitioner pled guilty had no specific weight requirement. Rather, it was simply sale of a controlled substance within one thousand feet of a school zone. Trial counsel testified that he believed that negotiating the sentence to eight years was a successful resolution to the case, and he believed that the petitioner entered the plea knowingly and voluntarily. He did acknowledge that the petitioner had initially been reluctant to accept a sentence with service at 100%, and trial counsel testified that he attempted to negotiate with the State. However, as he explained to the petitioner, the State was not open to a lesser sentence service because the drug sold was heroin, and the petitioner was part of a group of people bringing that drug into the area.

The petitioner also called his wife to testify. She reiterated that she was present during the meetings between the petitioner and trial counsel that occurred at trial counsel's office. She testified that she did not recall seeing any of the State's evidence other than the audio/visual recording. She did recall a discussion of some of the other evidence, although nothing regarding any discrepancies of weight in various reports.

After hearing the evidence presented by the parties, the post-conviction court denied relief. The petitioner has timely appealed that denial.

**Analysis**

On appeal, the petitioner contends that his guilty plea was not entered knowingly and voluntarily because he was deprived of his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by failing to provide him with all the discovery materials prior to the acceptance of the plea.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those

findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

In denying the petition for relief, the post-conviction court made the following findings of fact:

> All right. In this type of hearing the petitioner does have the burden of proving by clear and convincing evidence that the attorney's performance was deficient, that his handling of the case was deficient, and that the deficiency must show that - - the petitioner must show that trial counsel's performance was deficient, that he made errors so serious that counsel was not functioning as counsel - - the type of counsel guaranteed by the Sixth Amendment. And he must show that the deficient performance prejudiced the defendant. He must make both showings. To prevail on a claim of ineffective assistance of counsel, the petitioner must show that counsel's performance fell below an objective standard of reasonableness.
>
> In this case it does appear that [trial counsel] did meet with the [petitioner], managed to get him out on pretrial release so the [petitioner] would be able to meet with him and assist in the preparation of his case, and that appears to have happened. There were meetings. There was discussion.
>
> [Trial counsel] did show [the petitioner] the evidence, at least the audio/visual evidence. They did talk with one another about options, possibility of cooperation, attempts to get the case reduced to a lower class of felony. It appears that [trial counsel] was very conscientious and did a good job, and got the [petitioner] out with the absolute minimum sentence he could get for those charges.
>
> [The petitioner] had a prior conviction in another state for a similar crime. He was being prosecuted for two separate sales in this case. So he ran a fair risk of being found by this Court that he would be an offender who has knowingly devoted most of his life to criminal acts as a major source of his livelihood. That could've resulted in consecutive sentencing. He could've got a much much worse result. So it appears that [trial counsel] did him a good job and got him a good result.
>
> . . . .

-7-

[The petitioner's] other specific concern is the disparity between two -- apparent disparity between the weights of the . . . heroin referred to in one place as one amount and in another place a much larger amount. However, there is certainly not clear and convincing evidence that these amounts were ever purported to be the same heroin. There are two sales here. There would be two different amounts involved. Nor is there any clear and convincing evidence that either of those amounts are purported to be the entire amount that was involved in a particular case.

Those things are sometimes field tested. There may have been a very small amount taken and put on the scales for field testing that would be quite different from the gross amount that was found on execution of the search. I don't know, but that's the point. There has not been clear and convincing evidence to support any kind of finding along those lines.

So the Court would find that the [petitioner] fails to establish by clear and convincing evidence the significance or importance of [the issue] he raises to explain that - - to show that the attorney's performance in this case was deficient in any way at all. So this Court's holding would be that the petitioner . . . does fail to show by clear and convincing evidence that counsel's performance as an attorney was in any way deficient. And he certainly has failed to show by clear and convincing evidence that had the amounts been presented to him before that that would've affected the outcome. For the reasons I've stated, I do not find clear and convincing evidence to support that proposition either with regard to the videos or with regard to the differing amounts of contraband that are referred to in the lab report. For these reasons, the petition is respectfully denied.

As previously noted, the petitioner failed to include within this record the transcript of the guilty plea hearing. "[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). The court noted that an appellate court had the authority to order supplementation of the record if necessary for review. However, the court was clear that supplementation should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision. *Id*. If the record is adequate, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court. *Id*.

Review reveals that the record before us is sufficient for meaningful review of the challenged issue. The factual basis for the charges against the petitioner can be gleaned from the post-conviction hearing transcript, which is included in the record. Thus, we proceed with our review. *See State v. Monroe Mangium*, *Jr.*, No. W2012-00315-CCA-R3-PC, 2013 Tenn. Crim. App. LEXIS *36 (Tenn. Crim. App. Jan. 15, 2012) (appeal from the denial of a post-conviction petition alleging ineffective assistance of counsel without the benefit of a transcript of the guilty plea hearing).

Again, on appeal the petitioner sole contention is that his guilty plea was not entered knowingly and voluntarily because trial counsel was ineffective by failing to share all discovery information with the petitioner. In particular, the petitioner asserts that trial counsel "did not provide him the DEA lab reports regarding the amount and weight of the heroin which the [p]etitioner was charged with selling." He asserts that, had he seen these reports, he would not have agreed to enter the guilty plea. Moreover, the petitioner contends that it is insufficient that trial counsel testified that he "probably went over this information" because he had no specific memory of actually doing so. The petitioner points out that:

> Whether the discrepancy or disagreement regarding the weight and amount of the heroin involved in these cases would have actually made a difference with regard to the offenses with which the [p]etitioner was charged and pled guilty, it apparently, according to the [p]etitioner's testimony, would have made a critical difference to him in his decision about whether to accept the plea bargain, had he been aware of that information.

The State responds that the petitioner failed to prove the allegations by clear and convincing evidence and that the post-conviction court properly denied relief.

Following review of the record, we find nothing that preponderates against the post-conviction court's findings. Trial counsel testified that he believed that he had shared all discovery materials with the petitioner, including the reports dealing with the weight of the heroin, as it was his normal practice to do so. He acknowledged that this may not have occurred at the same time that he showed the petitioner the audio/visual recording because he recalled receiving discovery from the State in stages.. The only evidence that the petitioner did not receive the materials is his own self-serving testimony.

Based upon its findings, the post-conviction court clearly accredited trial counsel's testimony in this regard. As we have noted countless times, it is not the province of this court to reweigh or reevaluate credibility determinations made by the finder of fact. *See State v. Williams*, 657 S.W.2d 405, 410-11 (Tenn. 1983). Moreover, the record supports this determination. Thus, the accredited testimony shows that the petitioner saw the materials

prior to his entrance of the plea and, as such, his decision to plead was not affected. The petitioner has not shown an entitlement to relief.

Additionally, the petitioner has failed to establish any resulting prejudice. He received the minimum sentence possible for the crime to which he pled, which incidentally was not the more serious crime for which he was indicted. Trial counsel was clear in his explanation to the petitioner that the State had a strong case against him and that he would likely be convicted if he proceeded to trial. At the post-conviction hearing, the court noted the likelihood of conviction and consecutive sentencing as well. The petitioner testified that his main reason for accepting the plea agreement was to get a shorter sentence because his then girlfriend was pregnant at the time, a valid reason to accept the plea. He may not now recant that testimony in order to establish prejudice.

Finally, we must note that the petitioner acknowledged during the post-conviction hearing that he stood before the court at the guilty plea hearing, while under oath, and entered his plea after the court had explained the rights that he was waiving, the crimes for which he was charged, and the terms of the agreement. The petitioner also stated that he was satisfied with trial counsel and that he had not been coerced into accepting the plea. The petitioner may not now disavow these statements he made under oath. Rather, these sworn statements stand as witness against his testimony at the post-conviction court. No relief is warranted on these facts.

**CONCLUSION**

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE